UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 06-CV-3187 (JFB) (MLO)

---

TIMOTHY GILL,

Plaintiff,

VERSUS

WORLD INSPECTION NETWORK INTERNATIONAL, INC.,

Defendant.

---

MEMORANDUM AND ORDER
July 31, 2006

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Timothy Gill seeks preliminary injunctive relief, preventing defendant Worldwide Inspection Network International, Inc. ("WIN") from continuing to prosecute an arbitration proceeding against him in Seattle, Washington. Further, Gill seeks a declaration that any such arbitration must occur within the State of New York. WIN opposes the application, arguing that the forum selection clause in the franchise license agreement between the parties is effective to compel Gill to proceed with the arbitration in Washington. WIN also cross-moves to stay the instant proceeding pending the Washington arbitration. For the reasons stated below, Gill's motion for a preliminary injunction is denied, and WIN's cross-motion to stay the instant proceeding is granted.

I. BACKGROUND

The following facts are undisputed, unless otherwise indicated. WIN is a franchisor that licenses a home property inspection system under the "World Inspection Network" mark, pursuant to license agreements made with franchisees. (*See* Declaration of Jonathan P. Deex ("Deex Decl."), ¶ 2.) WIN has approximately 225 franchisees located in 30 states. (*See id.*) Gill was a WIN franchisee from February 2001 until February 2006. (*Id.* ¶ 5.)

On January 19, 2001, when Gill was still a prospective franchisee, he received a Uniform Franchise Offering Circular ("UFOC"), which included a copy of the form Franchise Agreement which Gill was required to sign.[1] (*See id.* ¶ 3; Ex. A; Ex. B.) Gill signed an acknowledgment that he received the UFOC, the Franchise Agreement and other

---

[1] The Franchise Agreement between WIN and Gill is hereinafter referenced as the "Franchise Agreement" and is attached as Exhibit A to the Declaration of Timothy Gill ("Gill Decl.").

related documents. (*See* Deex Decl. ¶ 3; Ex. A.) The UFOC contains a chart, which summarizes certain provisions of the Franchise Agreement. (*See* Deex Decl., Ex. B.) The sixteenth item in the chart ("u.") is entitled "Dispute Resolution by Arbitration or Mediation," and indicates that pursuant to sections 12.01-12.02 of the Franchise Agreement, "[e]xcept for certain claims, all disputes must be arbitrated before Franchise Arbitration and Mediation, Inc." (*Id.*) The seventeenth item in the chart ("v.") is entitled "Choice of Forum," and indicates that pursuant to section 12.01 of the franchise agreement, "[a]rbitration/litigation normally takes place in Washington." (*Id.*)

On February 2, 2001, Gill executed the Franchise Agreement. Section 12.01 of the Franchise Agreement addresses arbitration and forum selection, and specifically provides:

> . . . [a]ny controversy or claim arising out of or relating to this Agreement, or any breach thereof, including without limitation, any claim that this Agreement, or any breach thereof, is invalid, is illegal or otherwise voidable or void, shall be submitted to arbitration . . . . Such arbitration shall take place in or about King County, Washington.

Franchise Agreement, § 12.01. Section 13.01(d) includes a covenant not to compete, which specifically provides:

> In the event of termination or expiration of this Agreement as described in § 13.01(a) above, Franchisee shall not, for a continuous uninterrupted period of one year after the expiration or termination of this Agreement or when Franchisee actually stops conducting a similar business, whichever is later, regardless of the cause of termination, engage as an owner, partner, director, officer, employee, consultant, sales person, representative, service person or agent or in any other capacituy in any other business which is the same as or similar to the Franchised Business within, or market into, the Designated Area or within twenty-five miles of the border of the Designated Area. Franchisee shall cause each and all of its Operators to be bound by the terms of this provision.

Franchise Agreement, § 13.01(d).

In February 2006, the Franchise Agreement expired, and Gill elected not to renew it. Believing that Gill has violated the non-compete clause in the Franchise Agreement, WIN sought arbitration in King County, Washington, to enforce the provision. On June 16, 2006, Gill filed an Order to Show Cause in Supreme Court of the State of New York, Suffolk County, seeking that the court issue a preliminary and permanent injunction restraining WIN from prosecuting the arbitration proceeding in Washington, and directing that the parties, if they choose to arbitrate, must conduct the proceeding in New York. Gill also brought a claim alleging fraud under New York General Business Law section 687. On June 28, 2006, the case was removed to this Court.

II. MOTION FOR PRELIMINARY INJUNCTION

A. Preliminary Injunction Standard

"The preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies.'" *Grand River Enters. Six Nations*

2

*v. Pryor*, No. 02-CV-5068 (JFK), 2006 U.S. Dist. LEXIS 35614, at *16 (S.D.N.Y. June 1, 2006) (quoting *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985)). In order to prevail on a motion for a preliminary injunction, a party must establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Chinuch, Inc. v. Ostar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)); *Iron Mountain Information Mgmt., Inc. v. Taddeo*, No. 06-CV-2164 (JFB) (AKT), 2006 WL 1867049, at *6 (E.D.N.Y. June 30, 2006). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotations omitted). A preliminary injunction is not appropriate where monetary damages will serve as adequate compensation. *Id.* "The law in this circuit requires a showing that irreparable damages are likely, not merely possible." *Goldblatt v. Englander Communs.*, LLC, No. 06-CV-3208 (RWS), 2006 U.S. Dist. LEXIS 29443, at *10-11 (S.D.N.Y. May 16, 2006).

B. Likelihood of Success on the Merits

As a threshold matter, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the interpretation of the arbitration clause of the Franchise Agreement because the contract, in fact, contemplates arbitration and involves interstate commerce, specifically a relationship between a Washington franchisor and a New York franchisee.[2] *See Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834 (1995). The Supreme Court has recognized that the purpose of the FAA is to "place an arbitration agreement 'upon the same footing as other contracts where it belongs,' and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238 (1985) (citation omitted). The FAA establishes a clear and unequivocal "presumption in favor of arbitration" and requires that courts "rigorously enforce agreements to arbitrate." *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001); *Dean Witter Reynolds*, 470 U.S. at 221. However, despite the fact that the FAA expresses a strong federal policy in favor of arbitration, Congress enacted the FAA to "make arbitration agreements as enforceable as other contracts, *but not more so*." *Cap Gemmini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). Accordingly, under Section 2 of the FAA, an agreement to arbitrate is presumptively valid and irrevocable, except where grounds exist at law or in equity for revocation of the contract, including the pledge to arbitrate. 9 U.S.C. § 2 ("A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing

---

[2] Additionally, the Franchise Agreement itself indicates that it is governed by the FAA. Franchise Agreement, § 15.01 ("To the extent applicable, the United States Arbitration Act (9 U.S.C. § 1, *et seq.*) governs procedural and jurisdictional issues respecting arbitration of disputes under this Agreement.").

3

controversy arising out of such a contract . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652 (1996) (noting that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].") As the Supreme Court has noted, "[c]ourts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions . . . [b]y enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status requiring instead that such provisions be placed upon the same footing as other contracts." *Id.* (internal quotations and citations omitted).

In the instant case, Gill does not contest the fact that he has to arbitrate all disputes with WIN arising from the Franchise Agreement, but rather asserts that the arbitral forum selection clause, dictating that the arbitration should occur in King County, Washington, should not be enforced. As a general matter, courts consistently enforce arbitral forum selection clauses under the FAA's presumptive requirement that arbitration clauses are fully enforceable. *See e.g., Doctor's Associates, Inc. v. Hamilton*, 150 F.3d 157, 163-64 (2d Cir. 1998), *cert denied*, 525 U.S. 1103, 119 S.Ct. 867 (1999) (enforcing arbitral forum selection clause after concluding that unconscionability defense did not overcome presumptive enforceability under the FAA); *see also Management Recruiters Int'l v. Bloor*, 129 F.3d 851, 856 (6th Cir. 1997) ("[I]f . . . [Washington law] . . . imposed an absolute requirement of in-state arbitration notwithstanding the parties' agreement to arbitrate [elsewhere], its validity would be in serious doubt as a result of the preemptive effect of the FAA"); *see also Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("[U]nder the [FAA], the court must order the parties to arbitrate 'in accordance with the terms of the agreement'; one such term of the agreement is the parties' forum selection clause."); *N. Pac. Intern., Inc. v. Am. Lines/Am. Lines, Inc.,* 888 F. Supp. 31, 32 (S.D.N.Y. 1995) (finding that presumptive validity of forum selection clause in arbitration provision defeated inconvenient forum claim in opposition to motion to compel arbitration).

Gill argues that the arbitral forum selection clause should not be enforced in this case because it is unconscionable. Gill notes that the sentence dictating that arbitration will occur in Washington is found at the end of a "long and convoluted" paragraph of the Franchise Agreement. (*See* Pl.'s Mem. at 2.) Gill also asserts that retaining local counsel and making appearances in Seattle would impose a substantial financial hardship upon him, considering that he does not conduct business in that region, whereas WIN is a large corporation with significant resources and already conducts business in Suffolk County, New York with a number of other franchisees. (*See id.* at 3-4.) In addition, Gill argues that it would be more appropriate to conduct an arbitration in New York, since the witnesses who would be required to testify about his alleged violation of the covenant not to compete are located in New York. (*See id.* at 4.) Gill also argues that the arbitral forum selection clause should not be enforced because it is inequitable, citing a New Jersey Superior Court order which refused to enforce the identical clause against another WIN franchisee. (*See id.* at 5-6) (quoting *Allen v. World Inspection Network Int'l*, No. C-161-05

4

(N.J. Super. Ct., Ch. Div. 2005). Finally, Gill asserts that the Court should not enforce the clause because it contravenes New York public policy, as expressed by Article 33 of the New York General Business Law. (*See id.* at 6-7.)

In order to determine whether Gill is likely to succeed on the merits of his claim for injunctive relief to stay the Washington arbitration, the Court must first consider the issue of whether the enforceability of the arbitral forum selection clause is a question for this Court or the arbitrator in the first instance. The Court proceeds to examine that issue first, and then proceeds to consider Gill's arguments as to why the arbitral forum selection clause is unenforceable.

1. Forum for Determining Validity of Arbitral Forum Selection Clause

Given that Gill has conceded that claims arising from his dispute with WIN under the Franchise Agreement are arbitrable, the Court must first confront the issue of whether or not the issue of the enforceability of the particular arbitral forum selection clause is a decision that this Court has the authority to decide, or whether it is an issue for the arbitrator to determine.

In *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.E.2d 491 (2002), the Supreme Court addressed the question of which threshold issues to an arbitration are to be adjudicated by a court, and which should be submitted to the arbitrator to decide. The Court recognized that despite the general federal policy favoring resolution of issues by an arbitrator where there is an agreement to arbitrate, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the "*question of arbitrability*" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Id.* at 83 (internal quotation omitted). However, since any potentially dispositive question could be recast as a "question of arbitrability," the Court noted that for the purposes of applying the interpretive rule, "the phrase 'question of arbitrability' has a far more limited scope . . . applicable in the narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter." *Id.* Thus, the Court held that "a gateway dispute about whether the parties are bound by a given arbitration clause" and "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" raise "questions of arbitrability" for a court to decide. *Id.* at 84. On the other hand, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide." *Id.* Applying these rules, the *Howsam* Court held that a threshold question of whether the claim or claims at issue was submitted to arbitration within the requisite time limit fell within the class of procedural disputes that are to be submitted to the arbitrator. *See id.* at 85-86.

The Court finds that Gill is not likely to succeed on the merits of his claim that the arbitral forum selection clause is invalid as unconscionable because he is not likely to be able to show that it is a substantive gateway issue for a court to decide, under *Howsam*. First, several courts have held, interpreting *Howsam*, that the issue of the validity or interpretation of an arbitral forum selection clause is a procedural gateway issue for an arbitrator to decide. *See Richard C. Young & Co., Ltd. v. Leventhall D.D.S., M.S.,* 389 F.3d 1, 4-5 (1st Cir. 2004) (holding that issue of interpretation of forum selection provision

5

was a procedural matter for an arbitrator, not a court, to decide); *see also Ciago v. Ameriquest Mortgage Co.,* 295 F. Supp. 2d 324, 329-31 (S.D.N.Y. 2003) (noting that notice, forum selection, fee splitting and other related provisions did not render arbitration provision substantively unconscionable as a whole, and that the validity of the individual provisions, including forum selection, was a procedural issue for the arbitrator to decide).

Moreover, even if Gill was to convince the Court that, contrary to *Richard C. Young* and *Ciago*, that the issue of whether an arbitral forum selection clause may be enforced is a substantive "question of arbitrability" under *Howsam*, the language of the Franchise Agreement demonstrates that the parties clearly and unmistakably provided otherwise. According to the Franchise Agreement:

> [A]ny controversy or claim arising out of relating to this Agreement, or any breach thereof, including without limitation, any claim that this Agreement, *or any part thereof*, *is invalid, illegal or otherwise voidable or void*, shall be submitted to arbitration . . . .

Franchise Agreement, § 12.01 (emphasis added). This language plainly indicates that a challenge to the validity and enforceability of any part of the Franchise Agreement is a question to be resolved by arbitration. Consequently, it is to be resolved by the arbitrator, even assuming *arguendo* that it is normally an issue for a court to decide as a threshold matter. *Howsam*, 537 U.S. at 83 ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.") (internal quotation and citation omitted); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53, 123 S.Ct. 2402, 156 L.E.2d 414 (2003) (plurality opinion) (concluding that issue was question for arbitrator in part due to sweeping language concerning the scope of the questions committed to arbitration); *First Options, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.E.2d 985 (1995) (noting that parties may agree to submit issues of arbitrability to an arbitrator; courts should honor this decision when there is clear and unmistakable evidence of their intent); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002) (holding that issue of enforceability of arbitral forum selection clause over objection of unconscionability was an issue for the arbitrator where the arbitration clause explicitly provided that the arbitrator would have exclusive jurisdiction to resolve any dispute as to whether "all or any part of this Agreement is void or voidable").

Based on this threshold issue alone, the Court concludes that Gill is unlikely to succeed on the merits of his claim seeking to enjoin the prosecution of the Washington arbitration. However, out of an abundance of caution, the Court proceeds to examine and explain why Gill would be unlikely to succeed on the merits of his challenge to the enforceability of the arbitral forum selection clause, even if he were to prevail in his contention that it is an issue for a court to decide in the first instance.

2. Unconscionability

"An unconscionable bargain is one in which 'no man in his senses and not under delusion would make in one hand, and . . . no honest and fair man would accept on the other.'" *Doctor's Assoc., Inc. v. Jabush*, 89

6

F.3d 109, 113 (2d Cir. 1996) (quoting *Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 136 (1889)). State law is instructive as to whether an arbitral forum selection clause should not be enforced due to unconscionability.[3] *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("State law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). Both New York and Washington recognize two forms of unconscionability–substantive and procedural. Substantive unconscionability involves contract terms which are unreasonably one-sided or overly harsh on one party, that "shock the conscience." *See Nelson v. McGoldrick*, 127 Wash. 2d 124, 131, 896. P.2d 1258 (Wash. 1995); *see also Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (N.Y. 1988). Procedural unconscionability involves "the lack of meaningful choice," which considers all the circumstances surrounding the contract, including whether each party had a reasonable opportunity to understand the terms of the contract, whether deceptive tactics were employed, the use of fine print, and disparities in education, experience and bargaining power. *See Nelson*, 127 Wash. 2d at 131; *see also Gillman*, 73 N.Y. 2d at 10-11. Although a finding that a contract is unenforceable is generally predicated upon a finding that a contractual provision is both procedurally and substantively unconscionable, both Washington and New York law permit the substantive element alone to render the terms of a provision at issue unenforceable. *See Adler v. Fred Lind Manor*, 153 Wash. 2d 331, 345 (Wash. 2004); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254, 676 N.Y.S. 2d 569 (1st Dep't. 2000).

a. Substantive Unconscionability

As a preliminary matter, the existence of an arbitral forum selection clause is not *per se* substantively unconscionable, as they are not uncommon and can be reasonably anticipated in franchisor/franchisee licensing agreements. *See Sharp Electronics Corp. v. Branded Products, Inc.*, 604 F. Supp. 239, 242 (S.D.N.Y. 1984). In the instant case, Gill specifically argues that the arbitral forum selection clause is substantively unconscionable because of the significant financial burden that he would incur in proceeding with an arbitration proceeding in Seattle. In support of this proposition, Gill cites several New York cases in which arbitration clauses were held substantively unconscionable because the excessive costs necessary in proceeding under them were so unreasonable that they served to deter the party from invoking the process, and essentially deprived the party of a forum to seek redress under the agreement at issue. *See Brower*, 246 A.D.2d at 254; *see also Bank v. Worldcom, Inc.*, No. 122484/00, 2002 WL 171629 (Sup. Ct., N.Y. Cty. Jan. 24, 2002).[4]

---

[3] WIN notes the fact that the Franchise Agreement specifically dictates that Washington law applies. *See* Franchise Agreement, § 15.01. However, the parties did not fully brief this choice of law issue. The Court refrains from deciding the validity of the choice of law provision because the standards are substantially identical and the Court concludes that the arbitral forum selection clause is not unconscionable under either New York or Washington law.

[4] *See also Williamson v. Public Stores, Inc.*, No. 03-CV-1242 (RNC), 2004 WL 491058, at *2 (D. Conn. Mar. 1, 2004) ("An arbitration agreement may be unenforceable if it appears likely that the party seeking to vindicate legal rights will have to pay prohibitive costs.") (citing *Musnick v. King*

7

However, in the specific context of the franchisor/franchisee relationship, the Second Circuit has repeatedly rejected the argument that an arbitral forum selection clause can be unconscionable because of the high costs that may be associated in traveling and proceeding in a distant location. *See Hamilton*, 150 F.3d at 163 (rejecting New Jersey franchisee's argument that arbitral forum selection clause was unconscionable based on high costs and prejudice involved in arbitrating in Connecticut);[5] *Doctor's Assoc., Inc., v. Stuart*, 875 F.3d 975, 980 (2d Cir. 1996) (enforcing arbitral forum selection clause dictating that arbitration should occur in Connecticut, rejecting Illinois franchisee's argument that the distant forum rendered the clause unconscionable due to cost); *accord Jabush*, 89 F.3d at 112. The cases that Gill relies upon are distinguishable from the instant case, as they involve contracts for consumer goods and services, in which the there was sufficient evidence to indicate that the cost of proceeding with the arbitration under the specifications of the contract at issue would be prohibitive in relation to the relatively small amount in dispute in the case.[6] As opposed to the consumer goods and services context, an agreement between a franchisor and franchisee forms an ongoing business relationship with generally enough at stake such that the expense of proceeding with an arbitration in a foreign jurisdiction would not be so burdensome as to deter the vindication of rights under the agreement.

---

*Motor Co.,* 325 F.3d 1255, 1258-59 (11th Cir. 2003)).

[5] Gill attempts to distinguish *Hamilton* by noting that: (1) the distance between Connecticut and New Jersey is not nearly as significant as the distance between New York and Seattle, Washington; and (2) the *Hamilton* court expressly held that there was "nothing unconscionable about the arbitration clause because it clearly explained both the parties' responsibility for its own costs." 150 F.3d at 163. First, the Court notes that the *Hamilton* decision did not rely in any way on the distance between New Jersey and Connecticut as part of its decision. Gill's second argument is factually incorrect because the Franchise Agreement in this case plainly explained the parties' responsibilities for costs. *See* Franchise Agreement § 13.05 ("Should any party hereto commence any action or proceeding of enforcing or preventing the breach of any provision hereof . . . by arbitration . . . the prevailing party shall be reimbursed by the losing party for all costs and expenses incurred in connection therewith, including, but not limited to, reasonable attorneys' fees for the services rendered to such prevailing party.")

[6] In *Brower*, the contract at issue involved warranties regarding purchased computer equipment, and the forum selection clause at issue required arbitration in Chicago in accordance with the rules of the International Chamber of Commerce (ICC). *See* 246 A.D.2d at 248. The court noted that although the cost of most computer products covered by the contract was under $4,000, under ICC rules, the typical consumer claim would require advance fees of $4,000, of which $2,000 would be non-refundable, even if the consumer prevailed. *See id.* at 249. Although the court noted that the fact that the inconvenience of arbitrating in Chicago did not alone rise to the level of unconscionability, "the excessive cost factor that is necessarily entailed in arbitrating before the ICC is unreasonable and surely serves to deter the individual consumer from invoking the process." *Id.* at 254. Likewise, *WorldCom* involved a New York consumer's dispute regarding cellular service cancellation fees. *See* 2002 WL 171629, at *1. Although the court ultimately upheld Washington, D.C. as the arbitration venue, in accordance with the contract, it noted that "requiring that the arbitration be held in a distant city also imposes an undue expense, and may well be used as a way to discourage the bringing of claims." *See id.,* at *7.

8

Moreover, even if costs of arbitration in a particular forum could hypothetically rise to a level such that it would effectively deprive a business entity such as a franchisee of a forum to vindicate rights under a franchise licensing agreement, the record before the Court does not support such a finding of substantive unconscionability in the instant case. The burden lies with Gill to demonstrate that the arbitration would be prohibitively expensive. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513 (2000) ("[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."); *accord Valdes v. Swift Transp. Co., Inc.,* 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003). Determining whether costs are prohibitive involves a "case-by-case analysis, that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims." *In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp. 2d 385, 412 (S.D.N.Y. 2003) (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549, 556 (4th Cir. 2001)); *accord Stewart*, 201 F. Supp. 2d at 293. Whereas WIN has provided uncontroverted evidence that Gill had gross annual sales of $200,000 per year from 2003 to 2005 under the Franchise Agreement, Gill has failed to proffer a scintilla of evidence regarding the costs of arbitrating in Washington, other than his conclusory statement that it would cause him tremendous hardship.[7][8] (*See* Deex Decl., ¶ 5; *see also* Gill Decl., ¶ 17.) Mere conclusory assertions that costs associated with arbitration would be excessive do not alone render an arbitration agreement unenforceable.[9] *See Valdes*, 292 F. Supp. 2d

---

[7] Although Gill does not dispute WIN's assertion that he conducted over $200,000 in gross sales during the relevant time period, he argues that this figure does not accurately take into account Gill's actual net profits received during his operation as a franchisee. Although that is admittedly true, the large amount of revenue remains probative to the fact that the Franchise Agreement established a substantial business relationship, significant enough that the cost of arbitrating in another forum is not prohibitively expensive in relation to the value of the contract. Moreover, WIN also has submitted evidence that Gill made an estimated $150,000 of net profit during those years, based on results that were yielded from an expense survey of their franchisees, which calculated average annual operating costs. (*See* Deex Decl., ¶ 7.) Gill has failed to rebut this evidence with anything proffered on his own behalf to show these figures inaccurate, and has certainly failed to meet his own burden to demonstrate that the costs were prohibitively expensive in relation to the value of the contract such that the arbitral forum selection clause was substantively unconscionable.

[8] Moreover, Gill has not submitted any evidence regarding expected length of the arbitration, or the costs of the specific forum. WIN notes that many of the proceedings, including discovery conferences and witness testimony, could occur through telephone conferences to conserve travel costs.

[9] Additionally, it should be noted that the Franchise Agreement contains a provision under which the prevailing party is to be reimbursed by the losing party for all attorneys' fees and expenses incurred in the course of an arbitration proceeding conducted pursuant to the Franchise Agreement. Court have held that the mere risk of prohibitive costs is too speculative to justify invalidating an arbitration agreement. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d at 413 (citing *Green Tree*, 531 U.S. at 91); *see also Mesnick*, 325 F.3d at 1259-60 (holding that where an arbitration agreement

at 534 (citing *Green Tree,* 531 U.S. at 92); *Adler*, 153 Wash. 2d at 353 (holding that party challenging arbitration clause failed to meet his burden to show that arbitration procedure was so prohibitively expensive such that it was substantively unconscionable).

### b. Procedural Unconscionability

Although Gill does not specifically designate his argument as alleging procedural unconscionability, his declaration and memorandum of law both decry the fact that the arbitral forum selection clause was located at the end of a long and "convoluted" paragraph in the Franchise Agreement. (*See* Gill Decl., ¶ 3; *see also* Pl.'s Mem. at 2-3). The Court rejects this argument as it does not find that the forum selection language was so obscure as to risk exposing franchisees to unfair surprise, particularly in light of the fact that the language was unambiguous, in the same reasonably sized text as the other text in the Franchise Agreement (by no means hidden in a "maze of fine print"), and also repeated in the UFOC chart, which summarized the important provisions of the Franchise Agreement.[10] *See, e.g., Metro. Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co., Inc.,* 95 F. Supp. 2d 118, 122 (E.D.N.Y. 2000) (finding no procedural unconscionability despite provision being in small print, where the provision was unambiguous and there was no evidence that deceptive or high pressure tactics were employed when the contract was signed); *see also Gillman*, 73 N.Y.2d at 12 (finding no procedural unconscionability regarding term in fine print, noting that although the size and location of print may be factors bearing on the question in a proper, the existence of the term was highlighted elsewhere, in bold-face directly above the signature line); *Planet Ins. Co. v. Wong*, 74 Wash. App. 905, 915, 877 P.2d 198 (Wash. App. 1994) (finding no procedural unconscionability despite the fact that the term in question was in small print on the back of the agreement, noting that the term was clearly set forth, and that the front of the agreement contained language to alert them of the restriction imposed by the term at issue).

Moreover, although the Franchise Agreement was a standard form contract offered to all franchisees, the Court cannot

---

contains a "loser pays" provision that may involve some "fee-shifting," the claim of prohibitive costs is too speculative).

[10] Gill argues that the description in the summary chart creates an ambiguity because it merely notes that "litigation/arbitration normally" takes place in King County, Washington and that such phraseology could be interpreted to mean that it is not required for arbitration to occur in Washington, and that it could occur elsewhere. However, the Court notes that the summary document in fact accurately describes the operation of the arbitration clause because of the carve-outs provided under the terms of the arbitration clause in which claims could be adjudicated outside of a Washington arbitration. Under the plain terms of the arbitration clause, WIN was entitled to file an action in any court of competent jurisdiction for claims: (1) to collect sums due and payable to them under the Franchise Agreement (*See* Franchise Agreement, § 12.01); and (2) to obtain relief regarding trademark infringement issues (*See id.* § 12.02), neither of which apply here. In fact, a summary term that said that all disputes would occur by arbitration in Washington would inaccurately portray the effect of the arbitration clause. Overall, the summary chart plainly provided the potential franchisee with reasonable notice of a forum selection provision involving King County, Washington, and Gill cannot reasonably claim surprise that WIN initiated arbitration process against him in that venue.

find that Gill was so vulnerable or that there was such unequal bargaining power that it was procedurally unconscionable, given the business nature of a franchisor/franchisee relationship. *Jabush,* 89 F.3d at 113 ("As purchasers of a Subway sandwich franchise, the [franchisees were] not vulnerable consumers or helpless workers. They [were] business people who bought a franchise. We simply cannot conclude that, in deciding to purchase their franchise, the [franchisees] were forced to swallow unpalatable terms.").

In sum, on the record before the Court at this juncture, the Court cannot find that Gill would be likely to show that the Franchise Agreement was either procedurally or substantively unconscionable.

### 3. *Allen v. WIN* Argument

Gill argues that the Court should be persuaded by the analysis of the New Jersey Superior Court, Chancery Division in *Allen v. World Inspection Network International, Inc.*, No. CAM-C-161-05, which issued an order refusing to enforce the identical arbitral forum selection clause against a New Jersey WIN franchisee. On November 19, 2005, the New Jersey court orally entered the following order into the record:

> . . . It certainly [is] conceded that the defendant is a national organization with franchises around the country, it may not be in every state, but it's in enough states to have over 200. I think this figure was 250 some odd franchisees around the state – around the United States.
>
> Is this a contract of adhesion, has it been negotiated? We have Certifications that speak to that. I don't know that I really have to go that far. The – the defendant came here, the defendant undertook to attract a franchisee, the franchisee signed up . . . From an equitable stand point [sic] and notwithstanding my conclusion in that regard, it would appear that the defendant's effort is to say to somebody in Key West, Florida as well as Portland, Maine, or Detroit or Albuquerque that you can – you can arbitrate this, we want to arbitrate this, we want to remove this from litigation and by the way, we're going to recognize the law of the forum where this franchise is granted. But in order to take advantage of that law, you have to come to the State of Washington which can be in this instance perhaps over three thousand miles away.
>
> In – in – at first blush that's not fair. In fact, it – to use the colloquial term, is a bit shocking to the court's conscience. To – it in effect on one hand grants the right and on the other hand in practicality takes it away. We're not dealing and in the facts of this case with people who have the same prima facie ability to deal as does the franchisor.
>
> So we recognize New Jersey law, but only to the extent that it benefits us. And by the way, if you want to take advantage of it, you have to travel three thousand or more miles to do so.
>
> I'm satisfied that there should be an arbitration but I'm also satisfied that that arbitration will take place in the State of New Jersey.

11

(Declaration of Michael C. Schmidt ("Schmidt Decl."), Ex. B at 19-21.)

The Court declines to adopt Gill's argument that it should find the holding of the New Jersey court persuasive. First, the New Jersey court failed to cite any authority for refusing to enforce the arbitral forum selection clause, other than remarking that its own notion of equity compelled it not to do so. Although the court appeared at times to hint that it the clause was unconscionable (questioning in passing whether the Franchise Agreement is a "contract of adhesion," and noting that the franchisee did not have that the same "prima facie ability to deal as does the franchisor"), this Court has already determined that Gill is not likely to succeed on the merits of his argument that the arbitral forum selection clause was unconscionable, as discussed *supra*.[11] The New Jersey court did not provide any other justification for rescission of the contract which would justify not enforcing the plain terms of the arbitration clause under § 2 of the FAA.

Moreover, it appears that the New Jersey court's order was likely based on an application of an earlier New Jersey Supreme Court decision, *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.,* 146 N.J 176, 680 A.2d 618 (N.J. 1996), but the Second Circuit has refused to extend the *Kubis* decision to apply to arbitration agreements. At oral argument in *Allen*, counsel for the franchisee argued at length that *Kubis* and the policies behind that case should apply to invalidate WIN's arbitral forum selection clause. (*See* Schmidt Decl., Ex. B, at 6-9, 14-15.) In *Kubis,* the New Jersey Supreme Court held that the purposes of the New Jersey Franchise Practices Act, which the legislature enacted to afford protections to New Jersey franchisees, would be substantially undermined if franchisees were compelled to file suit in foreign jurisdictions pursuant to forum selection clauses in franchise agreements. *See* 141 N.J. at 192-93. Consequently, the New Jersey Supreme Court held that "forum-selection clauses in franchise agreements are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position." *Id.* at 195. However, the Second Circuit has explicitly rejected the application of *Kubis* to *arbitral* forum selection clauses. *Hamilton*, 150 F.3d at 163 ("To the extent that *Kubis* can be read to invalidate arbitral forum selection clauses in franchise agreements, it is preempted by the FAA.") (citations omitted). Bound by *Hamilton*, the Court cannot apply *Allen* to the extent that the order in that case relied on the rule and policy expressed in *Kubis*.

4. New York Public Policy

Finally, Gill avers that this Court should find that any arbitration be conducted in New York because New York has a strong interest in protecting its resident franchisees, as expressed in the legislative findings of Article 33 of the New York General Business Law:

[T]he offer and sale of franchises . . .

---

[11] The Court could strain to interpret the order of the New Jersey court to hold that the substantive unconscionability of the franchise agreement arose from the fact that the agreement in that case acknowledged on its own terms that it was to be governed by New Jersey law, yet arbitration was required in Washington. (*See* Schmidt Decl., Ex. B at 18, 20-21.) This argument would not apply here, as the Franchise Agreement in the instant case dictates that Washington law controls. *See* Franchise Agreement, § 15.01.

12

is a matter affected with a public interest and subject to supervision of the state[.] . . . Further, it is the intent of this law to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled.

N.Y. GEN. BUS. LAW § 680(2). Gill notes that other sections of the General Business Law proscribe fraudulent and unlawful practices on the part of franchisors, and another provides civil remedies to aggrieved franchises. *See* N.Y. GEN. BUS. LAW §§ 687, 690.

However, the Court finds that New York public policy does not operate to undermine the presumptive validity of the arbitral forum selection clause under the preemptive effect of the FAA. Under FAA preemption, New York could not pass an explicit law forbidding the enforcement of arbitral forum selection clauses against franchisees. *Hamilton*, 150 F.3d at 163 (holding that state rule that would invalidate arbitral forum selection clause in arbitration agreement is preempted by FAA); *Bloor*, 129 F.3d at 856 (noting that if Washington law "imposed an absolute requirement of in-state arbitration notwithstanding the parties' agreement to arbitrate [elsewhere], its validity would be in serious doubt as a result of the preemptive effect of the FAA"). If an explicit directive from the legislature could not suffice to invalidate the clause, amorphous expressions of public policy cannot either.

In sum, the Court concludes that Gill is unlikely to succeed on the merits of his claim because breach of § 13.01 of the Franchise Agreement is arbitrable under its plain terms, and competent authority supports the proposition that the issue of enforceability of an arbitral forum selection clause is an issue to be resolved by the arbitrator under *Howsam*. Alternatively, even if this Court had the authority to adjudicate the question of enforceability of the arbitral forum selection clause, the record before the Court lacks sufficient evidence that would justify a finding that the forum selection clause was unconscionable. Further, there is no basis for invalidating the clause under the rationale of the *Allen* case or under New York public policy, based on the Second Circuit's direction in *Hamilton*.[12]

### D. Irreparable Harm

Because Gill has not demonstrated a likelihood of success on the merits, or that there is a sufficiently serious question as to the merits of his claim that the arbitral forum selection clause should not be enforced, Gill is not entitled to a preliminary injunction, and the Court does not need to proceed any further. However, as set forth below, the Court finds that even if Gill had met his burden with respect to the merits, he has failed to meet his burden to demonstrate that he faces actual and imminent irreparable harm.

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (per curiam) (internal quotations omitted). "Irreparable injury is one that

---

[12] Moreover, for the same reasons that the Court finds that Gill is unlikely to succeed on the merits, the Court also finds that there is not a sufficiently serious question to the merits such that the Court should also consider whether or not the balance of hardships favor Gill for the purposes of the alternative prong of the preliminary injunction standard.

13

cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990). In addition, the mere possibility of harm is not sufficient. *Id.* "A successful plaintiff must demonstrate that absent interim relief it will suffer an injury that is neither remote nor speculative, but actual and imminent." *Consol. Brands Inc.*, 638 F. Supp. at 155.

Gill claims that he will have to assume an overwhelming financial burden if he is required to continue arbitrating with WIN in Seattle, Washington. Because Gill does not contest the fact that an arbitration should occur at all and only objects to the location of the arbitration, his claim of irreparable harm attaches to the unknown difference of cost in arbitrating locally in New York as opposed to Washington. As an initial matter, the Court notes that even if the Washington arbitration is ultimately stayed in favor of a New York proceeding, there is not much risk of duplicative proceedings because all that is chiefly involved at this point is discovery, which can be applied to whatever forum the dispute is ultimately arbitrated in. *See Odfjell ASA v. Celanese AG*, No. 04-CV-1758 (JSR), 2004 WL 1574728, at *3 (S.D.N.Y. July 14, 2004). Next, to the extent that Gill claims additional costs from prosecuting this action in a less convenient forum, the Court finds that he has failed to demonstrate that this financial hardship is actual and imminent, in light of the fact that, under the Franchise Agreement, he would be entitled to reimbursement for his expenses and legal fees should he prevail in the arbitration.[13] *See* Franchise Agreement, § 13.05. Because Gill's claimed irreparable harm is speculative, he has failed to satisfy his burden on this prong of the preliminary injunction standard.

E. Conclusion

For the reasons stated above, Gill's request for a preliminary injunction is denied.

IV. MOTION TO STAY INSTANT ACTION

WIN moves to stay the instant action, pending the Washington arbitration. A court faced with a request to stay or compel arbitration address two questions: (1) whether the parties have agreed to arbitrate and if so, (2) whether the scope of the agreement to arbitrate encompasses the claims asserted. *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.,* 189 F.3d 289, 294 (2d Cir. 1999); *North Ferry Co., Inc. v. Local 333*, 338 F. Supp. 2d 430, 433 (E.D.N.Y. 2004). Since Gill concedes that the parties have agreed to arbitrate in this case, the Court proceeds to examine whether the scope of the agreement to arbitrate encompasses the claims asserted. When deciding whether the parties have agreed to submit a particular question to arbitration, the court answers only the question of arbitrability and does not rule on the merits of the dispute. *N.Y. Health and Human Serv, Union, 1199/SEIU, AFL-CIO v. NYU Hosps. Center*, 343 F.3d 117, 119 (2d Cir. 2003); *North Ferry Co.,* 338 F. Supp. 2d at 433. Under the FAA, "as a matter of

---

[13] Since the Franchise Agreement follows the English rule/"loser pays" paradigm for expenses and attorney's fees, Gill's alleged financial hardship rises and falls with his success in the arbitration, regardless of where it held. Ironically, to the extent that Gill may have to expend less travel funds to prosecute the arbitration in New York, WIN will have to expend more, for which Gill could ultimately be liable should he lose the arbitration.

14

federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

As previously quoted, the Franchise Agreement in the instant case contains a broad arbitration clause, providing that:

> [A]ny controversy or claim arising out of or relating to this Agreement, or any breach thereof, including without limitation, any claim that this Agreement, or any part thereof, is invalid, illegal, or otherwise voidable or void, shall be submitted to arbitration. . . .

Franchise Agreement, § 12.01. Gill's complaint raises two claims: (1) a claim for injunctive relief to stay the Washington arbitration (*See* Compl. ¶¶ 29-36.); and (2) a claim for monetary damages, alleging fraud under New York General Business Law section 687 (*See id.* ¶¶ 23-28.) The Court examines whether each is covered by the arbitration clause in turn.

With respect to the first claim, which essentially requests that the Court find the arbitral forum selection clause unenforceable, the Court finds that it is covered by the scope of the Franchise Agreement for the reasons discussed *supra*–the Franchise Agreement unambiguously states that claims to be submitted to arbitration include ". . . any claim that this Agreement, or any part thereof, is invalid, illegal, or otherwise voidable or void. . . ." Franchise Agreement § 12.01. *See Stewart*, 201 F. Supp. 2d at 292 (holding that issue of enforceability of arbitral forum selection clause over objection of unconscionability was an issue for the arbitrator where the arbitration clause explicitly provided that the arbitrator would have exclusive jurisdiction to resolve any dispute as to whether "all or any part of this Agreement is void or voidable").

Similarly, Gill's cause of action alleging fraud under New York General Business Law section 687 is also captured by the broad language of the arbitration clause of the Franchise Agreement. Gill's complaint alleges fraud in the inducement of the entire Franchise Agreement, not in the inducement of the arbitration clause specifically. It is well–settled that broadly worded arbitration agreements cover claims of fraud in inducement of the entire agreement, unless they are expressly excluded. *See S.A. Mineracao Da Trindade-Samitri v. Utah Intern.*, 745 F.2d 190, 195 (2d Cir. 1984) (citing *Prima Paint Corp.,* 388 U.S. at 402-04 ). Gill argues that the language of the Franchise Agreement does not cover statutory claims, but the Court finds this argument to be without merit–claims under the New York Franchise Act are plainly claims "relating" to the Franchise Agreement.[14]

In sum, because it is conceded that the

---

[14] Gill expresses concern that the Washington arbitrator will not be inclined to apply the in-state protections provided by New York law. This speculation is irrelevant to whether or not the claim is covered by the arbitration clause in the Franchise Agreement. Nevertheless, the Court notes that there exists nothing in the record that would lead the Court to conclude that the Washington arbitrator would not faithfully and competently adjudicate all claims that are properly within the jurisdiction of its proceedings.

parties have agreed to arbitrate, and since the arbitration clause in the applicable agreement broadly covers both of the claims alleged in plaintiff's complaint, the Court grants defendant's motion to stay the litigation in favor of the arbitration.

V. CONCLUSION

For the foregoing reasons, plaintiff's application for a preliminary injunction is DENIED. Defendant's motion to stay this action pending arbitration is GRANTED. This case is stayed pending arbitration, and administratively closed.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 31, 2006
Central Islip, New York

\* \* \*

The attorney for plaintiff is Michael C. Schmidt, Esq. of Cozen O' Connor, 909 Third Avenue, New York, New York 10022. The attorneys for defendant are Daniel Gildin, Esq., David W. Oppenheim, Esq., and Kevin M. Shelley, Esq., of Kaufmann, Feiner, Yamin, Gildin and Robbins LLP, 777 Third Avenue, New York, New York 10017.